IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK J. COE, | : | CIVIL ACTION NO. **3:CV-07-500** |
| Plaintiff | : | (Judge Caputo) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Mark J. Coe, is seeking review of the decision of the Commissioner of Social Security (Commissioner) that denied his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to Titles II and XVI of the Social Security Act (Act).  42 U.S.C. §§ 401-433, 1381-1383(f).

## I.  PROCEDURAL HISTORY.

Plaintiff protectively filed applications for DIB and SSI on January 12, 2005, alleging disability since February 28, 2004 due to bipolar disorder and inability to control his temper. (R. 11, 13, 40, 51-52, 59).  The state agency denied his claim initially.  (R. 27-30).  Plaintiff filed a timely request for a hearing (R. 31) and a hearing was held before an Administrative Law Judge (ALJ) on July 14, 2006.  (R. 166-81).  At the hearing, Plaintiff, unrepresented by counsel, and a vocational expert (VE) testified.  (R. 168-81).  Plaintiff was denied benefits pursuant to the ALJ's decision of October 4, 2006.  (R. 8-17).

Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 6-7). Plaintiff's request was denied on January 18, 2007 (R. 3-5), thereby making the ALJ's decision the "final decision" of the Commissioner.  42 U.S.C. § 405(g) (1995).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 10 and 13).

## II.  STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.  ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (1990).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any

point in the sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that he has not engaged in "substantial gainful activity."  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b) (1995).  The second step involves an evaluation of whether the Plaintiff has a severe impairment.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that he is unable to perform his past relevant work.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).  The Plaintiff bears the burden of demonstrating an inability to return to his past relevant work.  *Plummer*, 186 F.3d at 428.  Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors.  *Id.*

In the present matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 11-17).  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful work since his alleged disability onset date, February 28, 2004.  (R. 13).  At step two, the ALJ concluded that Plaintiff's bipolar disorder with an inability to control his emotions and temper was a severe impairment within the meaning of the Regulations.  (R. 13-14).  At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments severe enough to meet or medically equal the requirements under the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (R. 14).  The ALJ paid particular attention to Listing 12.04, *et seq.*, but found that Plaintiff failed to meet the

3

listing requirements.  (R. 14).

At step four, the ALJ found that Plaintiff is unable to perform any of his past relevant work.  (R. 15).  At step five, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform work at all exertional levels with non-exertional restrictions.[1]  (R. 14-15).  The ALJ determined that there are a significant number of jobs in the regional and national economy that Plaintiff can perform.  (R. 16).  Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  (R. 17).  20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV.  BACKGROUND.

### A.  Factual Background.

Plaintiff was twenty-four years old on his alleged disability onset date and is considered a "younger person" under the Regulations.  (R. 15, 40); 20 C.F.R. §§ 404.1563(c), 416.963(c).  Plaintiff graduated high school in special education classes.  (R. 172, 176).  He has past relevant work experience as an assembler.  (R. 176).  Plaintiff has attempted to go back to work, however he only works a few weeks before getting frustrated and quitting.  (R. 171).  Plaintiff is single and lives with his parents.  (R. 172).

Plaintiff testified that he is unable to work because his medications cause drowsiness and dizziness.  (R. 172-73).  He takes Depakote, Wellbutrin and Seroquel.  (R. 173).  Plaintiff treats at Northern Tier Counseling approximately every three months.  (R. 173).

During the day, Plaintiff goes out with friends if he is not depressed.  (R. 173).  He does not like crowded places and has difficulty getting along with others.  (R. 174).  Plaintiff stated that he has no physical problems.  (R. 173-74).  He helps with household activities,

---

[1]  Specifically, the ALJ found that Plaintiff is capable of performing work at all exertional levels, with no work around large crowds, no dealings directly with the public, no constant or frequent interaction with co-workers or supervisors, with the ability to understand, remember and carry out simple instructions and make simple work-related decisions, with the ability to respond appropriately to supervision, co-workers and usual work settings and can appropriately handle changes in routine work settings.  (R. 14).

such as mowing the lawn.  (R. 174).

Vocational expert, George Starosta, testified based on the *Dictionary of Occupational Titles*.  (R. 176-79).  The VE stated that Plaintiff is a younger person with a high school or limited education.  (R. 176).  Plaintiff's past relevant work as an assembler is classified as unskilled work in the light duty exertional level.  (R. 176).

The ALJ asked the VE to hypothetically consider an individual with Plaintiff's same vocational and medical background with no physical or exertional problems.  (R. 176-77).  The individual would have mild restrictions in activities of daily living, moderate restrictions in social functioning, moderate restrictions in concentration, persistence and pace, with difficulty performing a highly complex job or a job that is highly detailed in nature, with difficulty being around crowds of strangers, dealing directly with the public, or constant or frequent interaction with co-workers and supervisors.  (R. 177).  The individual would be able to understand, remember and carry out simple instructions and carry out simple work-related decisions.  (R. 177).  The VE testified that such an individual would be able to perform work as a bench assembler with 1,200 available jobs in the region, 15,000 available jobs in the state and over one million available jobs in the national economy; a packager with 2,500 available jobs in the region, 30,000 available jobs in the state and over two million available jobs in the national economy; and a visual inspector with 1,300 available jobs in the region, 16,000 available jobs in the state and over 800,000 available jobs in the national economy.  (R. 178).

The ALJ then asked the VE to hypothetically consider an individual with Plaintiff's same vocational and medical background with limitations similar to those stated by Plaintiff in his testimony, including the side effects from medication, difficulty dealing with people, and difficulty with memory, concentration, persistence and pace.  (R. 178-79).  The VE stated that such an individual would not be able to perform the previously identified jobs because he would not be able to endure an eight-hour workday, five days per week.  (R. 179).

### B. Medical Background.

Plaintiff treated with George L. Ellis, M.D., in October 2004 complaining of depression.  (R. 100).  Plaintiff stated that he was never treated for depression or anger.  (R. 100).  Plaintiff reported that he was unemployed and has lost jobs due to anger and causing confrontations with others.  (R. 100).  Dr. Ellis' impression was depression and anger disorder.  (R. 100).

In October 2004, Plaintiff began treating at Northern Tier Counseling.  (R. 108). Plaintiff reported that he becomes easily frustrated, is depressed and has lost several jobs due to anger and/or paranoia.  (R. 109).

Plaintiff underwent a psychiatric evaluation performed by Michael Lavin, M.D., on January 3, 2005.  (R. 113).  Dr. Lavin diagnosed bipolar disorder, mixed, rule out impulse control and assessed a Global Assessment of Functioning (GAF) score of 48.[2]  (R. 113).

Dr. Lavin completed a Pennsylvania Department of Public Welfare Employability Assessment Form on January 3, 2005.  (R. 104-05).  Dr. Lavin diagnosed bipolar disorder, mixed and rule out impulse control.  (R. 105).  Dr. Lavin found that Plaintiff was temporarily disabled for less than twelve months, such disability beginning on January 3, 2005 and expected to last until January 2, 2006.

On March 14, 2005, Dr. Lavin noted that Plaintiff's mood and affect were normal, his thought process was intact, his therapeutic motivation was good and he assessed a GAF score of 60.[3]  (R. 165B).  In July 2005, Dr. Lavin again noted that Plaintiff's mood and affect were normal, his thought process was intact, his therapeutic motivation was good and he

---

[2]  A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision*, 34, Washington, DC, American Psychiatric Association, 2000.  (DSM-IV-TR).

[3]  A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM-IV-TR at 34.

assessed a GAF score of 60.  (R. 165).  He noted that Plaintiff had significant progress in stabilizing his moods and improving anger management and limited progress in increasing socialization.  (R. 165).

For the most part, Plaintiff was compliant with his medications, though he had a bout of noncompliance in November 2005.  (R. 135-57).  Plaintiff reported no side effects from his medications.  (R. 136-57).  Plaintiff's mood was generally stable and in June 2006 he reported that his condition was improved.  (R. 136-57).

J.J. Kowalski, M.D., a state agency physician, completed a Psychiatric Review Technique Form on March 9, 2005 and concluded that a RFC Assessment was necessary. (R. 117-30).  Dr. Kowalski evaluated Plaintiff's condition under the requirements of Listing 12.04 (Affective Disorders).  (R. 117).

A claimant is disabled *per se* under Listing 12.04 when he either satisfies the requirements of both 12.04(A) and 12.04(B), or of 12.04(C).  Dr. Kowalski found there was a disturbance of mood, accompanied by a full or partial manic or depressive syndrome, evidenced by "[b]ipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)."  (R. 120).

Under the "B" criteria of Listing 12.04, Dr. Kowalski found there were mild restrictions of activities of daily living; moderate difficulty in maintaining social functioning; moderate difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation.  (R. 127).  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(B).  Dr. Kowalski also found that the evidence does not establish the presence of the "C" criteria of the Listing.  (R. 128).  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(C).  Dr. Kowalski noted that Plaintiff does activities of daily living, he can have problems getting along with others, and trouble understanding complex instructions and completing projects.  (R. 129). Dr. Kowalski ultimately concluded that Plaintiff's allegations are partially credible, but they do not significantly limit functioning.  (R. 129).

Dr. Kowalski completed a Mental RFC Assessment on March 9, 2005.  (R. 131-34).
Dr. Kowalski found moderate limitations in some of Plaintiff's activities, no significant
limitations in a few of Plaintiff's activities and no evidence of limitation in two of Plaintiff's
activities.  (R. 132-33).

## V.  DISCUSSION.

Plaintiff argues that the ALJ erred in the following ways: (1) by failing to give
significance to the treating source opinion of Dr. Lavin; (2) by failing to present a
hypothetical question that included all of Plaintiff's impairments and limitations as
established by the record; (3) by failing to fulfill his affirmative obligation to assist Plaintiff in
developing a full and fair record; and (4) by failing to properly address the testimony of
Plaintiff regarding his daily activities.  (Doc. 10 at 6-7).

### A.  Whether the ALJ erred by failing to give significance to the treating source opinion of Dr. Lavin.

Plaintiff states that the ALJ erred by substituting his own opinion for that of the
treating medical professionals.  (Doc. 10 at 7).  Plaintiff states that he provided substantial
evidence of his disability.  (Doc. 10 at 7-8).  Specifically, Plaintiff states that the ALJ did not
consider Dr. Lavin's finding that Plaintiff had a GAF score of 48.  (Doc. 10 at 8).

Defendant states that Plaintiff's arguments are meritless.  (Doc. 13 at 7).  Although the
ALJ found that Plaintiff has a severe impairment, he then found that Plaintiff is capable of
performing other work.  Plaintiff fails to report that, although Dr. Lavin found that Plaintiff
had a GAF score of 48, two months later, Dr. Lavin reassessed Plaintiff's GAF score at 60.
(Doc. 13 at 8) (R. 165, 165B).  Defendant also states that Plaintiff was never treated for
depression or anger management prior to 2004.  (Doc. 13 at 8).

The Third Circuit set forth the standard for evaluating the opinion of a treating
physician in the case of *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000).  The Court stated:

> A cardinal principle guiding disability eligibility determinations is that
> the ALJ accord treating physicians' reports great weight, especially
> "when their opinions reflect expert judgment based on a continuing
> observation of the patient's condition over a prolonged period of

time." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent v. Schweiker*, 710 F.2d 110, 115.

*Id.* at 317-18. The ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). Although he must consider all medical opinions, the better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings, the more weight [the ALJ] will give that opinion. 20 C.F.R. § 404.1527(d)(3). While treating physicians' opinions may be given more weight, there must be relevant evidence to support the opinion. 20 C.F.R. § 404.1527(d). Automatic adoption of the opinion of the treating physician is not required. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

"The only reasons for an ALJ to reject a treating physician's opinion are 'on the basis of contradictory medical evidence,' or if the opinion is unsupported by medical data." *Kurilla v. Barnhart,* 2005 WL 2704887 at *5 (E.D. Pa. Oct. 18, 2005) (quoting *Plummer,* 186 F.3d at 429 and citing *Newhouse v. Heckler,* 753 F.2d 283 (3d Cir.1985)).

As stated, the ALJ noted that treating physician, Dr. Lavin, found that Plaintiff was temporarily disabled in January 2005. (R. 14). On January 3, 2005, Dr. Lavin diagnosed Plaintiff with bipolar disorder, mixed, rule out impulse control, and assessed a GAF score of 48. (R. 113). Dr. Lavin also found that Plaintiff was temporarily disabled for less than twelve months. (R. 104-05). In March and July 2005, Dr. Lavin noted that Plaintiff's mood and affect were normal, his thought process was intact, his therapeutic motivation was good and he assessed a GAF score of 60. (R. 165, 165B). Although Dr. Lavin found on one occasion

9

that Plaintiff had a GAF score of 48, he subsequently found on two occasions that Plaintiff had a GAF score of 60.  (R. 113, 165, 165B).

Dr. Kowalski, the DDS physician, concluded that Plaintiff retained the RFC for simple, routine, non-complex tasks.  (R. 15, 117-34).  The ALJ ultimately concluded that Dr. Kowalski's opinion was more consistent with the evidence of record.  (R. 15).  The ALJ noted that, in May 2005, Plaintiff's mood was stable, he denied manic symptoms, his sleep pattern was stable, his appetite was good and he was alert and oriented times three.  (R. 14, 151).  In August 2005, Plaintiff's mood continued to be stable, his anger was more manageable and there was no evidence of psychosis.  (R. 14).  Despite noncompliance with his medication in November 2005, Plaintiff was stable again in January and February 2006.  (R. 14-15, 140, 143, 146).  Further, in June 2006, Plaintiff reported that his condition improved.  (R. 15, 136).

The ALJ found that Plaintiff could perform a range of work at all exertional levels with restrictions.  The ALJ accounted for Plaintiff's functional limitations and found that he is limited to no work around large crowds, no dealings directly with the public, no constant or frequent interaction with co-workers or supervisors, with the ability to understand, remember and carry out simple instructions and make simple work-related decisions, with the ability to respond appropriately to supervision, co-workers and usual work settings and can appropriately handle changes in routine work settings.  (R. 14).

There is a significant basis for a determination that the ALJ did not err in evaluating the opinion of Dr. Lavin.

### B.  Whether the ALJ erred by failing to present a hypothetical question that included all of Plaintiff's impairments and limitations as established by the record.

Plaintiff's second argument is that the ALJ erred by failing to include all of Plaintiff's impairments in the hypothetical questions posed to the vocational expert.  (Doc. 10 at 9).  Plaintiff states that the hypothetical question included broad language stating that Plaintiff

has mild and moderate impairments, but failed to include Plaintiff's severe impairments of bipolar disorder, impulse control and depression and failed to account for Dr. Lavin's GAF score of 48. (Doc. 10 at 9). Plaintiff also states that the ALJ failed to include the side of effects of Plaintiff's medications, consisting of drowsiness and dizziness. (Doc. 10 at 9).

Defendant states that the ALJ's hypothetical questions included all of Plaintiff's credible impairments. (Doc. 13 at 10). Defendant states that because Dr. Lavin assessed a GAF score of 60 after his finding of a GAF score of 48, the ALJ was not required to account for the GAF score of 48. (Doc. 13 at 10).

A hypothetical question must include all of a claimant's impairments which are supported by the record; one which omits limitations is defective and the answer thereto cannot constitute substantial evidence to support denial of a claim. *Ramirez v. Barnhart*, 372 F.3d 546, 553-55 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). When forming his hypothetical questions, the ALJ included the impairments established by the record. The ALJ asked the VE to hypothetically consider an individual with Plaintiff's same vocational and medical background with no physical or exertional problems. (R. 176-77). The individual would have mild restrictions in activities of daily living, moderate restrictions in social functioning, moderate restrictions in concentration, persistence and pace, with difficulty performing a highly complex job or a job that is highly detailed in nature, with difficulty being around crowds of strangers, dealing directly with the public, or constant or frequent interaction with co-workers and supervisors. (R. 177). The individual would be able to understand, remember and carry out simple instructions and carry out simple work-related decisions. (R. 177). The VE testified that such an individual would be able to perform work as a bench assembler, a packager and a visual inspector. (R. 178).

The ALJ then asked the VE to hypothetically consider an individual with Plaintiff's same vocational and medical background with limitations similar to those stated by Plaintiff in his testimony, including the side effects from medication, difficulty dealing with people,

and difficulty with memory, concentration, persistence and pace.  (R. 178-79).  The VE stated that such an individual would not be able to perform the previously identified jobs.  (R. 179).  The ALJ found that Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, but not to the extent of the intensity, persistence and limiting effects stated by Plaintiff.  (R. 15).  The ALJ thus determined that Plaintiff is capable of performing a range of work at all exertional levels with restrictions.  (R. 14-16).

There is a significant basis for a determination that the ALJ did not err in posing his hypothetical questions and the questions included all of Plaintiff's limitations as supported by the record.  *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).  When an ALJ's hypothetical question to a vocational expert sets forth the Plaintiff's limitations, as supported by the record, the vocational expert's response may be accepted as substantial evidence in support of the ALJ's determination that the Plaintiff is not disabled.  *Id*.  Therefore, the vocational expert's response to the question, identifying jobs Plaintiff could perform, constitutes substantial evidence in support of the ALJ's determination that the Plaintiff was not disabled under the Act.  (R. 178).

### C.  Whether the ALJ erred by failing to fulfill his affirmative obligation to assist Plaintiff in developing a full and fair record.

Plaintiff next argues that the ALJ failed to fulfill his affirmative obligation to assist Plaintiff in developing a full and fair record.  (Doc. 10 at 10-14).  Plaintiff states that he is of below average intelligence, was unrepresented at the hearing, testified via telephone and was only questioned briefly by the ALJ.  (Doc. 10 at 11).  Plaintiff also states that the ALJ was "unable to judge the demeanor of the Plaintiff."  (Doc 10 at 11).

Defendant states that Plaintiff chose to testify by telephone and clearly made an informed waiver of his right to representation.  (Doc. 13 at 11-12).  Prior to the ALJ hearing, Plaintiff received information regarding his right to representation.  Plaintiff testified that he wished to proceed without representation.  (R. 169).  The ALJ stated as follows:

ALJ: Now, in these types of hearings, a lot of Claimant's [sic] participate just as you are by themselves.  Sometimes Claimant's [sic] come to hearings and they're represented by an attorney or a non-attorney representative.

CLMT: Yeah.

ALJ: So when I sent my notice of hearing out and the acknowledgment letter, I also included an explanation of the right to representation and I assume you got all those papers because you're ready to go through the hearing today.  Is that correct?

CLMT: Yes.

ALJ: Okay.  And you understood what was in those documents and you feel comfortable proceeding with the hearing without representation?

CLMT: Yes.

(R. 169).

*Jozefick v. Shalala*, 854 F. Supp. 342 (M.D. Pa. April 20, 1994), states that a hearing may be characterized as unfair where the ALJ has failed to discharge her obligation to develop a complete record.  "The question is not 'whether every question was asked which might have been asked had [the claimant] been represented by an attorney, [but] whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'"  *Jozefick*, 854 F. Supp at 348 (quoting *Edwards v. Sullivan*, 937 F.2d 580, 585-86 (11th Cir. 1991)).

A review of the record does not reveal any evidentiary gaps which result in prejudice to Plaintiff.  Plaintiff testified regarding his work history, education, home and daily activities.  (R. 172-74).  Plaintiff goes out with friends, though he does not like crowded places and has difficulty getting along with others.  (R. 174).  Plaintiff has no physical problems or impairments, he drives and runs errands.  (R. 62-65, 173-74).  Plaintiff helps with household activities, cleans, feeds his pets, takes out the garbage, mows the lawn, cooks and shops.  (R. 62-65, 173-74).

The ALJ elicited testimony from a vocational expert. (R. 176-79). Plaintiff stated that he could not hear the VE's testimony "too well." (R. 178-79). The ALJ therefore restated the VE's testimony. (R. 179). Plaintiff did not inquire further and did not state that he was unable to hear the VE. We note that, when a claimant proceeds to an ALJ hearing without the assistance of counsel, "the ALJ has an obligation, 'scrupulously and conscientiously [to] probe into, inquire of, and explore all relevant facts.'" *Jozefick*, 854 F. Supp at 348 (quoting *Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)). Here, the ALJ did just that. Additionally, the ALJ left the record open after the hearing concluded in order to obtain updated medical records before he rendered a decision. (R. 175, 180). There is a significant basis for a determination that the ALJ fulfilled his duty to develop the record and the facts.

### D. Whether the ALJ erred by failing to properly address the testimony of Plaintiff regarding his daily activities.

Plaintiff's last argument is that the ALJ failed to properly address Plaintiff's testimony regarding his daily activities. (Doc. 10 at 14-15). Plaintiff testified that, during the day, he goes out with friends if he is not depressed. (R. 173). He does not like crowded places and he has difficulty getting along with others. (R. 174). Plaintiff has no physical problems. (R. 173-74). As stated, Plaintiff drives, helps with household activities, cleans, feeds his pets, takes out the garbage, mows the lawn, cooks and shops. (R. 62-65, 173-74).

Defendant states that the ALJ did not ignore Plaintiff's testimony regarding his daily activities. Rather, the ALJ considered such testimony but the evidence establishes that Plaintiff developed improved impulse control, stabilized mood, improved anger management, increased socialization, full orientation, unimpaired memory and good thought process and motivation. (Doc. 13 at 14) (R. 114, 151, 165). The ALJ pointed to medical evidence that contradicted the Plaintiff's claims about the extent of his limitations. (R. 14-15). *See Mason*, 994 F.2d at 1067-68 (noting that a Plaintiff's subjective complaints of pain should be given "great weight" unless contradictory medical evidence exists). The

14

ALJ noted that Dr. Kowalski found that Plaintiff has only mild restrictions of activities of daily living, moderate difficulty maintaining social functioning, moderate difficulty with concentration, persistence and pace and no episodes of decompensation.  (R. 15).  In May 2005, Plaintiff's mood was stable, he denied manic symptoms, his sleep pattern was stable his appetite was good and he was alert and oriented times three.  (R. 14, 151).  In August 2005, Plaintiff's mood continued to be stable, his anger was more manageable and there was no evidence of psychosis.  (R. 14).  Plaintiff was generally compliant with his medication regiment, but was noncompliant in November 2005.  Plaintiff was stable in January and February 2006 and in June 2006, Plaintiff reported that his condition improved.  (R. 14-15, 136, 140, 143, 146).  The ALJ stated that Plaintiff's activities are "inconsistent with his claims of being totally disabled."  (R. 15).

As stated above, the ALJ accounted for Plaintiff's functional limitations when rendering his RFC determination.  The ALJ found that Plaintiff is capable of performing work at all exertional levels, with no work around large crowds, no dealings directly with the public, no constant or frequent interaction with co-workers or supervisors, with the ability to understand, remember and carry out simple instructions and make simple work-related decisions, with the ability to respond appropriately to supervision, co-workers and usual work settings and can appropriately handle changes in routine work settings.  (R. 14).

There is a significant basis for a determination that the ALJ did not fail to properly address Plaintiff's testimony regarding his usual daily activities.

## VI.  RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that Plaintiff's appeal be DENIED.


<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 14, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK J. COE, | : | CIVIL ACTION NO. **3:CV-07-500** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## **NOTICE**

_____NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing

Report and Recommendation dated February 14, 2008.

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a de novo determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings

or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 14, 2008**