# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK J. COE,  :  | |
| :  | |
| Plaintiff,  :  | |
| :  | CIVIL ACTION NO. 3:07-CV-0500 |
| v.  :  | |
| :  | |
| MICHAEL J. ASTRUE,  :  | (JUDGE CAPUTO) |
| Commissioner of Social Security  :  | |
| :  | (MAGISTRATE JUDGE BLEWITT) |
| Defendant.  :  | |

## MEMORANDUM

Plaintiff, Mark J. Coe, brought this 42 U.S.C. §§ 405(g) action on January 18, 2007, alleging that the Social Security Commissioner's denial of Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits was not supported by substantial evidence. 42 U.S.C. §§ 401-433, 1381-1383(f). The matter before me is Magistrate Judge Thomas M. Blewitt's Report and Recommendation of February 14, 2008, recommending that the appeal be denied. (Report, Doc. 14.) Plaintiff enumerated two (2) objections in response to the Report and Recommendation. (Objections, Doc. 15.) As I find that the Administrative Law Judge's ("ALJ") determinations are supported by substantial evidence, I will deny Plaintiff's objections, and adopt Magistrate Judge Blewitt's Report and Recommendation denying the appeal.

## BACKGROUND

### I.    Factual History

Plaintiff is Mark J. Coe, who was born on August 9, 1979, and was twenty-four (24) years old at the alleged disability onset date. (Tr. 40.) Under the Regulations, Plaintiff is

classified as a "younger person."  (Tr. 40); 20 C.F.R. §§ 404.1563(c); 416.963(c).  Plaintiff graduated high school, but was on learning support.  (Tr. 172.)  He had worked previously as a janitor, cook, and laborer.  (Tr. 172.)  He went to work for a few weeks at a time, but would get frustrated and quit.  (Tr. 171-72.)  Plaintiff is single and lives with his parents. (Tr. 172.)

Plaintiff testified that he cannot work because the medications that he is prescribed make him dizzy and drowsy.  (Tr. 172.)  He currently is prescribed Seroquel, Depakote, and Wellbutrin SR.  (Tr. 173.)  He is treated at Northern Tier Counseling every three (3) months by Dr. Michael Lavin.  (Tr. 173.)  He has been treated for bipolar disorder and impulse control disorder (Tr. 105) as well as complaints of depression.  (Tr. 109.)  His medical records also reflect a history of anger outbursts.  (Tr. 136-60.)

## II.     Procedural History

On January 12, 2005, Plaintiff filed an application for DIB and SSI benefits pursuant to Titles II and  XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f, alleging disability since February 28, 2004 due to bipolar disorder and an inability to control his temper.  (Tr. 51-52.)  Initially, the stage agency denied his claim.  (Tr. 27-30.)  Plaintiff filed a timely request for a hearing, which was held before an Administrative Law Judge ("ALJ") on July 14, 2006. (Tr. 166-81.)  At the hearing, Plaintiff and a Vocational Expert ("VE") testified.  (Tr. 171-81.)  The ALJ denied Plaintiff benefits pursuant to his decision on October 4, 2006.  (Tr. 8-17.)  Plaintiff requested appellate review of the ALJ's decision.  (Tr. 6-7.)  The Appeals Council denied his request on January 18, 2007, making the ALJ's decision the "final decision" of the Commissioner under  42 U.S.C. § 4059(g).  *See Rankin v. Heckler*, 761 F.2d 936, 941 (3d Cir. 1985).

That decision is the subject of this appeal.

On February 14, 2008, Magistrate Judge Blewitt recommended that Plaintiff's appeal be denied. (Doc. 14.) Plaintiff timely filed objections to the Report and Recommendation on March 3, 2008. (Doc. 15.) Defendant filed a response to Plaintiff's objections on March 17, 2008. (Doc. 16.) The matter has been fully briefed by both parties and is now ripe for disposition.

## STANDARD OF REVIEW

A.     Review of Magistrate Judge's Report and Recommendation

Where objections to the magistrate judge's report are filed, the Court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In making its *de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the statute permits the Court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the Court should review uncontested portions for clear error or

manifest injustice.  *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

    B.    <u>Review of Social Security Administration's Findings</u>

The factual findings of the Social Security Administration must be deemed conclusive unless the reviewing court finds that they are not supported by substantial evidence.  42 U.S.C. § 405(g); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Substantial evidence means "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion."  *Lewis v. Califano*, 616 F.2d 73, 76 (3d Cir. 1980); 42 U.S.C. s 405(g)."  *Id.*  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence has also been described as enough evidence to withstand a directed verdict motion where the disputed proposition is one of fact for the jury.  *See NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939); *Olsen v. Schweiker*, 703 F.2d 751, 753 (3d Cir. 1983).

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by this evidence.  *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence."  *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.  Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting that evidence.  *Id.* at 706-07.  In determining if the Commissioner's decision is supported by substantial evidence, the Court must scrutinize the record as a whole.  *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

## DISCUSSION

### I. Disability Benefits

In order to receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Section 432 further states that:

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 432(d)(2)(A).

**II.     Evaluation Process**

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520.  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999); *Sassone v. Soc. Sec. Comm.*, 165 Fed. App'x 954 (3d Cir. 2006) (non-precedential).  If the Commissioner finds that the Plaintiff is not disabled within the meaning of the law, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920.

First, the plaintiff must establish that he has not engaged in "substantial gainful activity."  *See* C.F.R. §§ 404.1520(b), 416.920(b).  Second, an evaluation is performed to determine whether the plaintiff has a severe impairment.  *See* C.F.R. §§ 404.152(c), 416.920(c).  Third, the Social Security Commissioner determines whether the impairment or a combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulation Number 4.

Fourth, if the plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the evaluation process and determine whether the plaintiff has established that he is unable to perform his past relevant work.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).  The plaintiff bears the burden of proof that he is unable to return to his past relevant work.  *Plummer*, 186 F.3d at 428.  Fifth, and finally, the Commissioner must demonstrate that other jobs exist in significant numbers in the national economy that the plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education, and past working experience in step five.  20 C.F.R. §§ 404.1520(f), 416.920(f).  In conducting this inquiry,

the Commissioner is to consider the plaintiff's stated vocational factors.  20 C.F.R. §§ 404.1520(f), 416.920(f).

### III.    Objections

#### A.    The ALJ's Development of the Factual Record

Plaintiff's first objection to the Report and Recommendation is Magistrate Judge Blewitt's finding that the ALJ fulfilled his duty to develop the record and facts.  Plaintiff argues that the claimant attended special education classes in order to graduate from high school, and that he is of "limited intelligence."  Plaintiff further argues that his one word answers to compound questions led to his "unknowing" waiver of his right to a full and fair hearing.

"When . . . a claimant proceeds to a hearing before an Administrative Law Judge ("ALJ") without assistance of counsel, the ALJ has an obligation [to] 'scrupulously and conscientiously probe into, inquire of, and explore all relevant facts. . . .'" *Jozefick v. Shalala*, 854 F. Supp. 342, 344 (M.D. Pa. 1994) (Vanaskie, J.) (quoting *Smith v. Sec'y of Health, Educ. and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)).  "Absence of counsel at the administrative hearing not only increases the responsibility of the ALJ, but also requires the court to undertake a searching review of the record to determine that the claimant has received a full and fair hearing."  *Id.* (citing *Brittingham v. Weinberger*, 408 F. Supp. 606, 611 (E.D. Pa. 1976)).

"A hearing may be characterized as 'unfair' where the ALJ has failed to discharge his obligation to develop a complete record."  *Id.* at 348 (citing *Livingston v. Califano*, 614 F.2d 342, 345 (3rd Cir.1980)).  "The question is not 'whether every question was asked

which might have been asked had [the claimant] been represented by an attorney, [but] whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'" *Id.* (quoting *Edwards v. Sullivan*, 937 F.2d 580, 585-86 (11th Cir.1991)).

In *Jozefick*, Judge Vanaskie noted that the ALJ failed to adequately develop the factual record. *Id.* The ALJ acknowledged the importance of missing medical records regarding the patient's condition. *Id.* He was told by the claimant that the doctor refused to provide the claimant with the records. *Id.* at 345. However, the ALJ made no attempt to contact the doctor to request the records, nor did he rule upon the oral request to issue subpoenas to the doctors to compel them to testify. *Id.* The court noted that "'where a claimant is unrepresented and plainly unequal to the task of developing her own record, the failure of the administrative judge to 'call witnesses or indicate that she ought to do so' can result in less than a full hearing.'" *Id.* at 348 (quoting *Fernandez v. Schweiker*, 650 F.2d 4, 8 (2d Cir. 1981)). As the ALJ failed to subpoena the witnesses, or request the documents, the ALJ was found to "fail[ ] to exercise his authority to attempt to fill significant evidentiary gaps that are material to the disability determination." *Id.* at 349.

In this case, the ALJ discharged his duty to conduct a full and fair hearing. At the beginning of the hearing, the ALJ explained to the claimant what was going to occur, and then discussed his right to cousel.

> ALJ: The hearing today – I want to give you a brief outline of what we'll do.
>
> CLMT: Okay.
>
> . . .
>
> ALJ: Okay. I'm going to swear you in as a witness in a little

8

> while and I want to ask you questions about your ongoing medical problems. I want to find out where you are in terms of treatment of your conditions, which doctors you may be seeing, what medications you're taking.
>
> CLMT: All right.
>
> ALJ: I'm going to ask you some questions about your background in terms of work experience and education. And I will give you the opportunity to tell me everything you want to tell me about your disability. Today I also have present in the hearing room an additional witness, which we call a vocational expert and the individual's name is George Starosta. And I want to ask him some questions and during the course of the hearing if you would like to ask him anything, I'll give you the opportunity to do that.
>
> CLMT: Okay.

(Tr. 168-69.) Therefore, the transcript indicates that the ALJ explained the process to the claimant prior to the start of the hearing. Furthermore, the ALJ discussed the right to counsel with the Plaintiff.

> ALJ: Now in these types of hearings, a lot of Claimant's participate just as you are by themselves. Sometimes Claimant's [sic] come to hearings and they're represented by an attorney or a non-attorney representative.
>
> CLMT: Yeah.
>
> ALJ: So when I sent my notice of hearing out and the acknowledgment letter, I also included an explanation of the right to representation and I assume you got those papers because you're ready to go through the hearing today. Is that correct?
>
> CLMT: Yes.
>
> ALJ: Okay. And you understood what was in those documents and you feel comfortable proceeding with the hearing without representation?
>
> CLMT: Yes.

9

(Tr. 169.)  The ALJ clearly described to the Plaintiff that he had a right to representation, asked if he received the documentation, asked if he understood the documentation, and finally asked if Plaintiff was comfortable proceeding without representation.  Plaintiff made no indication that he did not understand or that he wanted representation.

Although Plaintiff completed high school through the means of special education classes, there is no indication that Plaintiff's intellectual ability was such that he could not understand the questions waiving counsel.  His school records indicate that he has average intellectual ability through a full IQ scale score of 100.  (Tr. 75.)   Plaintiff gives an example of his intellectual capacity as reflected in the record in his brief.  However, Plaintiff was able to answer all of the ALJ's questions but the one (1) question listed as the example of his intellectual capacity.  Furthermore, once the ALJ clarified the question, the Plaintiff was able to successfully answer the question.  Plaintiff also notes that he was once given a GAF (Global Assessment of Functioning) score of 48.  Manual of Mental Disorders (DSM-IV) 32 (American Psychiatric Association).  A GAF score of 48 indicates serious impairment in social or occupational functioning.  However, Plaintiff also had two (2) GAF scores of 60, which indicates moderate, bordering on mild, difficulty in social and occupational functioning.  The GAF score of 48 was taken during Plaintiff's intake examination, in January of 2005. (Tr. 113.)  The two GAF scores of 60 occurred in March 2005 and September 2005.  (Tr. 165, 165B.) The ALJ's decision to utilize the two (2) GAF scores of 60 was supported by substantial evidence, because those scores were more recent than the score of 48.

Plaintiff also argues that there are evidentiary gaps in the record. Specifically, Plaintiff notes the ALJ's comment that "I think that we may be missing some updates

10

here because the last records we have from Northern Tier were early in 2005.  But in a few minutes I'll find out if you've been going for ongoing treatment and if so, I'm going to request those records."  (Tr. 170.)  Unlike the ALJ in *Jozefick*, the ALJ in this case did not fail to call necessary witnesses or obtain necessary documents. Upon reviewing the record, there are medical records through 2006, and therefore the ALJ must have requested those records subsequent to the hearing.  The ALJ also elicited testimony to develop a full and fair hearing.   The ALJ properly required the Plaintiff to testify regarding his education, work history, and daily activities.  (Tr. 172-74.)  He testified that he goes out with friends, but does not like crowded places, and has difficulty dealing with others.  (Tr. 174.)  Plaintiff can drive and run errands.  (Tr. 173-74.)  He also helps with household chores, cleans, feeds his pets, takes out the garbage, mows the lawn, cooks, and shops.  (Tr. 62-65, 173-74.)

      Plaintiff further argues that the ALJ should have elicited more testimony about the 2006 reports and that she should have called Dr. Lavin as a witness.  To that end, Plaintiff argues that the ALJ did not elicit sufficient testimony at the hearing.  However, the ALJ did have at his disposal numerous medical documents referring to the Plaintiff's health, as well as school records documenting the Plaintiff's intellectual capabilities.  Furthermore, when the ALJ noted that he did not have all of the medical records in his possession, he requested them, and they are there currently in the record.  He was able to develop a full and fair record through the use of the medical records, which did not require questioning of Dr. Lavin.  The ALJ also questioned the Plaintiff regarding his current mental health, in that he asked if he was still receiving treatment, who his treating physician was, and what medications he was on.  The ALJ also asked about the

Plaintiff's day-to-day activities, and had him explain how he has trouble getting along with people.  (Tr. 174-75.)  Therefore, the ALJ did not fail in his duty to provide a full and fair hearing to the Plaintiff.

Plaintiff also argues that he failed to receive a full and fair hearing when appearing by telephone, and that the ALJ failed to provide an opportunity for the Plaintiff to question the VE.  However, Plaintiff specifically requested that he have the appointment over the phone, as he had no transportation to the hearing.  (Tr. 24.)  Therefore, the telephone conference was held for the convenience of the Plaintiff.

The ALJ explained to the Plaintiff at the beginning of the hearing that the VE would testify, and that the Plaintiff would have an opportunity to ask questions of him during the hearing.  (Tr. 168.)  The ALJ elicited testimony from a vocational expert regarding the availability of employment for a person of Plaintiff's condition.  (Tr. 176-79.)  After the VE's testimony, the ALJ asked the Plaintiff if he had any questions for the ALJ, and the Plaintiff's only comment was that "I can't really hear him too well."  (Tr. 179.)  The ALJ then restated the VE's testimony.  (Tr. 179.)  Plaintiff made no indication that he had any other questions to ask at that time, or at any later point.

There are no evident evidentiary gaps in the record, and therefore the ALJ properly developed the evidentiary record.  There is substantial evidence to support a determination that the ALJ fulfilled his duty to develop the record and facts, and therefore Plaintiff's objection to Magistrate Judge Blewitt's Report and Recommendation will be denied.

    B.    <u>Hypothetical Question to the Vocational Expert</u>

A hypothetical presented to a vocational expert must "reflect all of a claimant's

impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1273 (3d Cir. 1987) (citing *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984); *Wallace v. Secretary*, 722 F.2d 1150 (3d Cir. 1983)).

In this case, the ALJ asked the VE two sets of hypothetical questions. First, the ALJ asked the VE to consider an individual with Plaintiff's same vocational and medical background and no physical or exertional impairments. (Tr. 176.) The ALJ noted that this individual would have mild restrictions in activities of daily living, moderate restrictions in social functioning, moderate restrictions in concentration, persistence and pace, with difficulty performing a highly complex job or job that is highly detailed. (Tr. 177.) The ALJ further noted in the hypothetical that the individual would have difficulty working in a crowd of strangers, dealing directly with the public, and having constant or frequent interaction with coworkers or supervisors. (Tr. 177.) The ALJ also included in this first hypothetical that he could understand, remember, carry out simple instructions, and make simple work-related decisions. (Tr. 177.)

The VE stated that such an individual could engage in sedentary, light and medium work. (Tr. 178.) He noted that one could perform bench-type assembly, with 1200 jobs in the region, 15,000 in the state, and one million plus in the national economy. (Tr. 178.) He also suggested packing, which has 2500 jobs in the region, 30,000 in the state, and two million plus in the national economy. (Tr. 178.) Finally, he stated that such an individual could perform visual inspection, with 1300 jobs in the region, 16,000 in the state, and 800,000 plus in the national economy. (Tr. 178.) The VE noted that he could mention many additional jobs. (Tr. 178.)

13

The ALJ then outlined a second hypothetical for the VE.  (Tr. 178.)  In this hypothetical, the ALJ noted that, if he had the "side effects [the claimant] experiences from medication, difficulty dealing with people, and difficulty with memory, concentration, persistence, and pace."  (Tr. 178-79.)

In this instance, the VE testified that such a person could not do the previous work because he would not be able to endure an eight (8) hours work day, five (5) days per week, and such a person would be unable to demonstrate appropriate behavior for competitive work.  (Tr. 178.)

Plaintiff makes several arguments that the ALJ's hypotheticals to the VE were not supported by substantial evidence.  The Plaintiff argues that the ALJ ignored medically undisputed evidence of specific impairments and that the ALJ did not take into account Plaintiff's bipolar disorder, impulse control, depression, and GAF scores.  The Plaintiff argues that the ALJ incorrectly stated in his hypothetical that the hypothetical person had mild and moderate impairments.  Finally, Plaintiff argues that the ALJ erred by failing to mention Plaintiff's complaints of drowsiness and dizziness.

In this case, there is substantial evidence supporting the ALJ's hypothetical questions to the VE.  The ALJ stated to the VE that he should consider an individual with the "same vocational profile and . . . essentially the same medical history, including the medications that our Claimant is taking."  (Tr. 176.)  Although the ALJ did not specifically mention Plaintiff's medical conditions in the hypothetical, the VE was to consider those conditions, such as Plaintiff's depression.  Therefore, the ALJ did not ignore the impairments, but included them by reference in his hypothetical.  In the second hypothetical, the ALJ asked the VE to consider the side effects described by the Plaintiff.

(Tr. 178.)  Although the ALJ did not specifically mention drowsiness and dizziness in his hypothetical, the hypothetical did state that the hypothetical claimant would have the side effects described by the Plaintiff.  (Tr. 178-79.)  Plaintiff notes that the ALJ did not mention these symptoms in his first hypothetical.  However, the ALJ is only required to include the limitations that are supported by the record.  *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).  In this case, the ALJ noted in his decision that the limiting side effects were not entirely credible, as the claimant could drive, run errands, mow the law, visit friends, perform self-care activities, and help around the house.  (Tr. 15.)  The ALJ further noted that the medical records do not reflect complaints of severe side effects from medication.  (Tr. 15.)

The Plaintiff further argues that the ALJ did not include in his hypothetical that the Plaintiff had a GAF of 48.  However, as discussed in the previous section, the ALJ was supported by substantial evidence in finding that the Plaintiff's GAF score was 60, and as the ALJ need only include limitations supported by the record, was not required to state in his hypothetical that the Plaintiff had a GAF score of 48.  The ALJ did take into account the Plaintiff's impairments by specifically stating that the hypothetical claimant had a

> mild degree of impairment in terms of activities of daily living
> and a moderate degree of impairment with regard to social
> functioning and concentration, persistence and pace.  And this
> would result in the individual having difficulty doing a highly
> complex job or a job that was highly detailed in nature.  It
> would also have an impact on the Claimant doing a job where
> he had to work in crowds of strangers or if he had to deal
> directly with the public or if he had to have constant or
> frequent interaction with coworkers and supervisors.

(Tr. 177.)  The ALJ's hypothetical included limitations supported by the record.  As the severity of the Plaintiff's impairments was found to be exaggerated by the Plaintiff and

not supported by medical evidence, the ALJ was correct in not including further impairments in this hypothetical. Therefore, the ALJ's hypothetical to the VE was supported by substantial evidence, and Plaintiff's objection on this point will be overruled.

## CONCLUSION

As I find that the ALJ's determinations regarding the development of the evidentiary and factual record is supported by substantial evidence and that the questions to the Vocational Expert included the Plaintiff's mental limitations, I will adopt Magistrate Judge Blewitt's Report and Recommendation, and deny Plaintiff's appeal.

An appropriate order will follow.


March 25, 2008                                              /s/ A. Richard Caputo
Date                                                        A. Richard Caputo
                                                            United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARK J. COE, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION NO. 3:07-CV-0500 |
| v. : | |
| : | |
| MICHAEL J. ASTRUE, : | (JUDGE CAPUTO) |
| Commissioner of Social Security : | |
| : | (MAGISTRATE JUDGE BLEWITT) |
| Defendants. : | |

## **ORDER**

**NOW**, this 25th day of March, 2008, after consideration of Magistrate Judge Blewitt's Report and Recommendation (Doc. 14) recommending that the Plaintiff's appeal be denied (Doc. 1), and of Plaintiff's objections to the Magistrate Judge Blewitt's Report (Doc. 15), **it is hereby ORDERED** that:

1. Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (Doc. 15) are **OVERRULED**.

2. The Report and Recommendation (Doc. 14) is **ADOPTED**.

3. Plaintiff's appeal of the Commissioner's decision is **DENIED**.

4. The Clerk of the Court is to mark the matter in this Court **CLOSED**.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge